PEOPLE ex rel. WALTERS v. LEWIS, Police Com'r.

(Supreme Court, Appellate Division, Second Department. March 9, 1906.)

1. MUNICIPAL CORPORATIONS—POLICEMEN—REMOVAL—GROUNDS.

Evidence that a patrolman neglected during the night to report by telephone to the station house from the places established on his beat for that purpose, and that he returned to the station house drunk the next morning, justified his removal from the police force.

[Ed. Note.—For cases in point, see vol. 36, Cent. Dig. Municipal Corporations, § 493.]

2. SAME—DEFENSES.

On trial of a police patrolman for failure to report by telephone during the night as required, and for returning to station house drunk next morning, testimony by the patrolman that he was afflicted with interstitial nephritis and that he procured the liquor to relieve an attack of this difficulty was insufficient to excuse his conduct, as it was his duty to report the fact if he was ill.

3. WITNESSES—CREDIBILITY—CROSS-EXAMINATION.

On trial of a police patrolman before the police commissioner on charges of neglect of duty and drunkenness, in which the patrolman testified that he took the liquor to relieve a disease with which he claimed to be afflicted, it was proper on a cross-examination to show, for the purpose of affecting defendant's credibility, that he had been previously tried on similar charges of neglect of duty and intoxication.

[Ed. Note.—For cases in point, see vol. 50, Cent. Dig. Witnesses, §§ 1106-1108.]

4. APPEAL—HARMLESS ERROR—EXAMINATION OF WITNESSES.

Even if the evidence had not been admissible as affecting defendant's credibility, nevertheless its admission would not have been reversible error, in view of the right of the police commissioner to examine the defendant's record in imposing sentence, etc.

Hooker, J., dissenting.

Certiorari by the people of the state of New York, upon relation of Loren J. Walters, against Edson Lewis, as police commissioner of the

city of Mt. Vernon, to review a determination of the defendant remov-ing the relator from the police force of the city of Mt. Vernon. De-termination affirmed.

Argued before HIRSCHBERG, P. J., and WOODWARD, JENKS, HOOKER, and GAYNOR, JJ.

Sydney A. Syme, for relator.

Isaac N. Mills, for respondent.

GAYNOR, J. The evidence against the petitioner that he neglect-ed during the night to report by telephone to the station house from the places established on his beat for that purpose was not disputed; and that he returned to the station house drunk the next morning is scarcely questioned. His dismissal was therefore an act of duty, unless his excuse was a good one, for such men have no business on the police force.

The testimony of the petitioner is that he had been afflicted for two years or more with interstitial nephritis, and its accompanying heart pains, and that he had frequent recurring attacks thereof, thirty in two years, more than one a month; that he had three attacks of heart pain during this night, the first at about 11 o'clock; that he got some whiskey in a bottle and drank it at intervals on his beat, and remembered nothing thereafter, and was unable to give any account of himself, except that he barely remembered his return to the station house in the morning.

His own evidence established the case of neglect charged against him, for if he was taken sick it was his duty to report the fact by telephone or in person, or in some way, so that his beat might be covered. His neglect to do this was a neglect to cover his beat and report at inter-vals as required. There was therefore no question that the charge against him was established, and that does away with all technicalities of evidence.

But his excuse was plainly without foundation. Though he claimed to have suffered from chronic nephritis and its pains for more than two years, he never reported the fact to the police surgeon, as was his duty. He had been on the force about two years and eight months, and when he was appointed he was carefully examined and found to have no dis-ease.

All that is claimed is that his dismissal must be reversed on the tech-nical ground that on his cross-examination he was required to testify to having been several times tried on similar charges of neglect of duty, viz., absence without leave five times and intoxication while on duty once, and found guilty of them and fined.

This seems not to have been error according to strict common law rules of evidence. That he had committed six derelictions similar to that he was being tried for in the short period of his police service was competent on his cross-examination on the question of the probable credibility of his excuse in the present case. That rule is applied even on trials for crime (People v. Casey, 72 N. Y. 393; People v. Moelke, 94 N. Y. 137, 46 Am. Rep. 128; People v. Irving, 95 N. Y. 541; People v. Giblin, 115 N. Y. 199, 21 N. E. 1062; 4 L. R. A. 757; People v. Webster, 139 N. Y. 73, 34 N. E. 730), as well as in a case like this

(People v. Reavey, 38 Hun, 424; People v. Dorthy, 156 N. Y. 237, 50 N. E. 800; Shepard v. Parker, 36 N. Y. 517).

But even if this were not so, the police commissioner had the right to examine his whole record as a policeman to determine what punishment to impose on him, and whether he did that during the trial or after retiring from the bench, or had it all in mind from personal experience or previous examination does not matter. Although a police commissioner of a small city like this may be presumed to know the record of all of his men, he is not thereby disqualified from trying them. Indeed that fact better qualifies him to try them. It will not do for the courts to be so technical and finical in such matters. They have already gone far in that respect, according to just intelligent opinion. No one can delude himself with the notion that a police commissioner fit to hold his place will try a policeman without referring to his record and knowing the sort of man he is. To hold that the commissioner may read the policeman's record, but that if he has it put before him on the trial his judgment will be reversed, would, it seems to me, be absurd. In the case of People ex rel. Clarke v. Roosevelt, 168 N. Y. 488, 61 N. E. 783, the conviction was upheld although the commissioners examined the policeman's record before finding him guilty; and that is all that was done in this case, turn it how you will.

The presumption is that the commissioner did his duty, and found the petitioner guilty on the evidence of his present dereliction and not on his past record. Indeed, he so certifies, not very aptly, it is true, but unmistakably after all, certainly as plainly as in the Clarke Case, and it would be altogether too critical to interpret his certificate to the contrary. The technical common law rules of evidence which are applicable to jury trials, and some of which many think might well be relaxed or done away with even in jury trials, after the manner of such trials in England, do not apply to administrative trials like this. Police commissioners are not technical common law lawyers or judges.

The question for this court is whether there is sufficient evidence that the petitioner neglected his duty as charged. If there is, then the presumption is that he was found guilty on that evidence, and not because of past offences. Any other rule would lead to undue interference and disorder.

The judgment of the commissioner should be upheld.

Determination confirmed, with costs. All concur, except HOOKER, J., who dissents.

HOOKER, J. (dissenting). The relator was charged with willful disobedience of orders, in failing to make telephonic reports to the station house from his beats. The evidence upon the merits was conflicting and the question close, and it is apparent that a slight variance in favor of the relator might have turned the judgment the other way. On cross-examination the relator was asked:

"Q. How many times, from the time you first came on the force down to the present time, have you been charged with violation of the rules and either admitted your guilt and been found guilty or punished?

"Mr. Syme: I object to any examination on that line, upon the ground that it is incompetent and an indirect manner of proving the conviction upon another charge which is not admissible for the purpose of this trial.

"Mr. Bell: These questions are all proper for the purpose of testing the witness's credibility.

"The Commissioner: I shall rule against Mr. Syme.

Mr. Syme: Exception.

\* \* \* \* \* \* \* \* \* \*

"Q. Is it not true that on December 26, 1901, you were charged with absence without leave and fined two days' pay?

"Mr. Syme: I object to the form of the question upon the same grounds as formerly.

"The Commissioner: I shall rule in favor of Mr. Bell.

"Mr. Syme: Exception.

"Q. Is that true? A. Yes, sir."

Over similar objection the prosecuting attorney was allowed to ask, and the relator answered, that he was convicted on April 26, 1902, June 25, 1902, December 4, 1903, and December 18, 1903, and stated the punishment he received upon each conviction. It is the established law that:

"In determining the guilt of a police officer, who is on trial for charges preferred against him, the police commissioners cannot act upon their own knowledge. The charges must be tried upon evidence, and the guilt must be established by evidence produced before the commissioners upon the trial. \* \* \* But in inflicting the punishment they may take into consideration the evidence, as well as their own knowledge of the police officer, and inflict such punishment, authorized by the rules and the statutes, as in their judgment the case, in view of all the circumstances, requires." People ex rel. McAleer v. French, 119 N. Y. 502, 507, 23 N. E. 1061, 1062; People ex rel. Clarke v. Roosevelt, 168 N. Y. 488, 489, 61 N. E. 783.

From the record now under review it is apparent that the police commissioner considered the evidence of the relator's prior convictions in determining the question of his guilt under the charges he was then trying. His return states that:

"Appended hereto and marked 'Exhibit A' is the record of all the proceedings had upon the charge preferred against Loren J. Walters on the 26th day of February, 1904, for disobedience of orders in failing to report from certain telephone boxes and all testimony taken upon the trial of the said Loren J. Walters, all statements made upon said trial, together with all objections, specifications, proceedings, exceptions, charges, judgments, orders, and convictions touching upon said matter."

The proceedings which have been quoted, showing the relator's testimony on his cross-examination in respect to prior convictions, included what was so "appended" to the return of the respondent. The second paragraph of the return states:

"I certify that so much of said evidence as was offered and received in support of the charge preferred was considered by me in determining the question of guilt of said Loren J. Walters upon said charge; and that so much of said record as was not so received was exclusively considered by me in determining the question of the punishment to be inflicted upon him upon his conviction."

It is apparent, therefore, that all of the evidence received upon the trial before the commissioner was considered by him in determining the question of Walters' guilt. Evidence of his prior convictions was received, and hence that must have been considered by the commissioner

in determining this question of guilt. The return itself shows that some matters were exclusively considered in determining the question of punishment, but, according to the return itself, only that part of the record that was not received in evidence was so considered. It affirmatively appears, therefore, from the return ·of the police commissioner itself, that he considered the record of former convictions upon the question of guilt, and this he should not have done under the authorities cited.

The determination of the commissioner should be annulled, with costs.